**NOT YET SCHEDULED FOR ORAL ARGUMENT**

---

**No. 23-7057**

---

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**

**MARGDA PIERRE-NOEL,
APPELLANT,**

**v.**

**THE DISTRICT OF COLUMBIA**

**AND**

**BRIDGES PUBLIC CHARTER SCHOOL,**

**APPELLEES.**

---

**ON APPEAL FROM AN ORDER OF THE
UNITED STATES DISTRICT COURT FOR THE DISTRICT OF
COLUMBIA**

---

BRIEF FOR APPELLEE, BRIDGES PUBLIC CHARTER SCHOOL

> **Lauren E. Baum [53598]**
> **Law Office of Lauren E. Baum, PC**
> 3573 Warder Street, NW, #2
> Washington, DC 20010
> 202-450-1396
> l.baum@laurenebaumlaw.com

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

**(1)    Parties and Amici**

Margda Pierre-Noel ("Ms. Pierre"), on behalf of her minor son, K.N., was the plaintiff in the district court and is the appellant in this Court. Bridges Public Charter School and the District of Columbia were the defendants in the district court and are the appellees in this Court. *Amicus curiae* supporting Ms. Pierre is Council of Parent Attorneys and Advocates ("COPAA"). Both the District and Bridges consented to the participation of COPAA as *amicus curiae*.

**(2)    Ruling under Review**

The rulings under review are the opinion and order (Dist. Ct. Docs. 34 and 35) entered by the Honorable Trevor N. McFadden on April 6, 2023, in *Pierre-Noel on behalf of K.N. v. Bridges Pub. Charter Sch.*, No. 1:23-CV-00070 (TNM), 2023 WL 2809175 (D.D.C. Apr. 6, 2023).

**(3)    Related Cases**

Counsel is not aware of this case being previously reviewed by this or any other Court. Counsel is also not aware of any related cases docketed in this Court.

# TABLE OF CONTENTS

CERTIFICATE OF PARTIES, RULES AND RELATED CASES…………………i

TABLE OF CONTENTS…………………………………………………...……ii

TABLE OF AUTHORITIES………………………………………………………iii

GLOSSARY OF ABBREVIATIONS……………………………………………..iv

STATEMENT OF THE ISSUE…………………………………………………….1

STATEMENT OF THE CASE……………………………………………………..1

SUMMARY OF THE ARGUMENT……………………………………………4

ARGUMENT…………………………………………………………………....4

The essential dispute in this case is between Ms. Pierre and the District because it is the District, not Bridges, that is required to provide special education transportation to K.N.

I.        The District, not Bridges, is required to provide special education transportation to K.N…………………………………………….4

II.       Bridges does not take a position as to whether the IDEA's "transportation" requirement should be interpreted broadly as Ms. Pierre suggests………………………………………..……….....13

III.      Conclusion..…………………………………………………… 14

CERTIFICATE OF COMPLIANCE…………………………………………...16

CERTIFICATE OF SERVICE……………………………………………………17

## TABLE OF AUTHORITIES

**Cases**

*B.R. ex rel. Rempson v. D.C.*, 802 F. Supp. 2d 153 (D.D.C. 2011)………………10

*Ellenberg v. New Mexico Mil. Inst.*, 478 F.3d 1262 (10th Cir. 2007)…………..8, 9

*Thomas v. D.C.*, 773 F. Supp. 2d 15 (D.D.C. 2011)……………………………..10

**Statutes and Regulations**

20 U.S.C.A. § 1407(a)…………………………………………………………….7

20 U.S.C.A. § 1411 (a)……………………………………………………………7

20 U.S.C.A. § 1411 (f)…………………………………………………………….7

20 U.S.C.A. § 1411 (f)(3)…………………………………………………………7

20 U.S.C.A. § 1412 (a)(1)…………………………………………………………7

20 U.S.C.A. § 1412 (a)(11)………………………………………………………..7

20 U.S.C.A. § 1413 (g)……………………………………………………………8

20 U.S.C.A. § 1413(g)(1)…………………………………………………………5

20 U.S.C.A. § 1413(g)(2)…………………………………………………………5

20 U.S.C.A. § 1413(h)(2)…………………………………………………………11

DC ST § 38-2901 (12)……………………………………………………………..6

DC ST § 38-2907………………………………………………………………….6

34 C.F.R. § 300.175………………………………………………………………11

34 C.F.R. § 300.227(a)(1)…………………………………………………………8

## GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| IDEA | Individuals with Disabilities Education Act |
| IEP | Individual Education Program |
| FAPE | Free Appropriate Public Education |
| OSSE | Office of the State Superintendent of Education |
| LEA | Local Education Agency |
| SEA | State Education Agency |
| District | District of Columbia |
| OSSE DOT | OSSE Division of Transportation |
| Condo | Condominium |

## STATEMENT OF THE ISSUE

Does the IDEA require the District and/or Bridges to carry K.N. up and down the stairs between his condo unit door and the school bus?

## STATEMENT OF THE CASE

K.N. has been enrolled at Bridges since the 2020-2021 school year but has never attended school in person at Bridges. K.N. initially enrolled at Bridges for the 2020-2021 school year when Bridges was closed as a result of the COVID-19 pandemic and all students were learning virtually. When most students returned to in-person learning for the 2021-2022 school year, K.N. continued with virtual learning because his complex medical needs prevented him from returning to school in person at that time.

K.N. was expected to return to school in person for the 2022-2023 school year. At Ms. Pierre's request and in preparation for K.N.'s return to school in person, Bridges amended the IEP on July 27, 2022 to include, as part of the student's related service of transportation, assistance to get the student from his apartment unit door to the bus and from the bus to his apartment unit door. AR at 847.

In the District of Columbia, OSSE is responsible for providing the related service of transportation to students who qualify. AR at 1034-49. Pursuant to OSSE policy, the LEA and IEP team are responsible for determining whether a

1

student qualifies for transportation as a related service, and if so, appropriately

identifying and documenting that need on the IEP. AR at 1039. OSSE policy

states:

> It is the responsibility of the IEP Team to determine, on an individual basis,
> whether transportation is required to assist a student with a disability with
> accessing special education and related services, and if so, how the
> transportation services should be implemented.

AR at 1040. The IEP team is responsible for determining if the student requires

any specialized equipment and/or additional supporting services. AR at 1042. Once

such determinations are made and properly documented, OSSE is responsible for

implementing transportation in accordance with the IEP, including the provision of

specialized equipment and supporting services. *Id*. at 1035, 1040-42, 1047.

After the IEP was amended in July 2022, Bridges properly submitted the

resulting transportation request to OSSE. OSSE refused to provide transportation

in conformity with the student's IEP, specifically refusing to provide the student

with assistance getting from his apartment unit door to the bus and vice versa.

Bridges attempted to compel OSSE's implementation of the IEP by

initiating a due process hearing request against OSSE and seeking an order from a

hearing officer requiring OSSE to implement the transportation services as

prescribed in the IEP. AR at 894. Rather than letting that process play out, Ms.

Pierre filed her own hearing request against OSSE, which also included claims

against Bridges. AR at 5.

The hearing officer issued a decision on December 27, 2022. AR at 1461. On the transportation claims, the hearing officer correctly concluded that transportation is the responsibility of OSSE. AR at 1473-74. OSSE conceded this point. AR at 1474. Nevertheless, the hearing officer declined to require OSSE to implement the door-to-door support prescribed in the IEP. AR at 1475-80.

On January 10, 2023, Ms. Pierre filed an appeal in district court. The merits of her claims were decided on an expedited basis. On April 6, 2023, the district court issued its memorandum opinion. *Pierre-Noel on behalf of K.N. v. Bridges Pub. Charter Sch*., No. 1:23-CV-00070 (TNM), 2023 WL 2809175 (D.D.C. Apr. 6, 2023). The district court ruled that neither the District nor Bridges had to assist K.N. between his condo and the school bus because that service was not a "related service" as defined by the IDEA. The district court went on to confirm that Bridges has been "relieved from *all* transportation obligations (even assuming carrying a student to the bus were included)." *Id*. at *10 (emphasis included in original).

At all times during these administrative proceedings, Bridges expressed support for Ms. Pierre's assertion that FAPE for K.N. requires that the related service of transportation include support getting from his apartment unit door to the bus and vice versa. AR at 1624-34. Bridges also maintained the position that if such support is required for FAPE, then OSSE is responsible for providing it.

## SUMMARY OF THE ARGUMENT

Bridges does not take a position as to whether the IDEA's related service provision includes carrying a student up and down the stairs in his condo building. That dispute is between the District and Ms. Pierre. Bridges wrote the needed service into K.N.'s IEP to facilitate his return to school in person. OSSE refused to implement the transportation services as written in the IEP, insisting that doing so went beyond the IDEA's requirements. Whether the requested service is contemplated by the IDEA or goes beyond what is required is the essential issue to be decided in this case. If the service is required by the IDEA, then District law and policy make it clear that OSSE is responsible for implementing it as prescribed by the IEP.

## ARGUMENT

As shown below, OSSE is responsible for implementing the related service of transportation to eligible students in the District of Columbia, and as such, the hearing officer correctly dismissed Bridges with respect to the transportation issues asserted by Ms. Pierre.

I.    **The District, not Bridges, is required to provide special education transportation to K.N.**

Bridges fulfilled its obligations as it relates to transportation – determine eligibility and ensure the IEP appropriately identifies the transportation services

4

and related supports to be provided. DC law and policy are clear that the provision of the related service of transportation is the responsibility of OSSE. As the district court correctly concluded, Bridges has been "relieved from *all* transportation obligations." *Id*. at *10 (emphasis included in original).

Under the IDEA, a State may decide that it, rather than individual LEAs, can best provide a related service to students within its jurisdiction. In doing so, the State

> shall use the payments that otherwise would have been available to a [school] . . . to provide special education and related services directly to children with disabilities . . . if the [State] determines that the . . . children . . . can best be served by a regional or State program or service delivery system designed to meet the needs of such children[.]"

20 U.S.C. § 1413(g)(1). The District has chosen this route for special education transportation services. As a result, the District must provide transportation "in such manner . . . as [it] considers appropriate" in compliance with the IDEA. 20 U.S.C. § 1413(g)(2). As correctly pointed out by the district court, there is "nothing in this language that preserves a role for the school once the State has decided to provide a related service." 2023 WL 2809175 at *11.

On May 5, 2010, the district court issued an order transferring responsibility for conducting day-to-day operations of the Division of Transportation from a Transportation Administrator appointed by the court back to the District. *Petties v. District of Columbia*, Civil Action No. 95-0148 (D.D.C. May 5, 2010) (DKT

5

#1786). Consequently, the Division of Transportation is now the responsibility of OSSE. Under District law, OSSE receives all the funding for transportation of disabled students in the District and is charged with the responsibility for providing that transportation. DC ST § 38-2901 (12)); DC ST § 38-2907. As a result, OSSE provides and funds special education transportation for students with disabilities through the OSSE DOT. *Id*.

In furtherance of its obligation to provide transportation services to disabled students, OSSE promulgated its Special Education Transportation Policy ("Policy"), last updated on November 6, 2013. AR at 1034. The Policy provides that the OSSE DOT "shall provide special education transportation services to students with disabilities when transportation is appropriately identified and documented on an IEP as a related service under the IDEA." AR at 1039. The Policy establishes LEA responsibilities as it relates to transportation, and nothing in the Policy puts the onus of implementation on the LEA.

The IEP team determines whether transportation is required and "how the transportation services should be implemented." AR at 1040. OSSE's Policy acknowledges that transportation may include specialized equipment and/or additional supporting services such as health services or the assistance of an aide. AR at 1040-41. The IEP team determines if specialized equipment or supporting related services are needed. AR at 1041. Once the LEA documents these decisions

and submits the necessary data and supporting documents to the OSSE DOT (which OSSE concedes was done here), "OSSE DOT is responsible for ensuring that transportation services are implemented" including specialized equipment and related services. AR at 1035, 1040-41, 1047.

The contention that Bridges is liable for OSSE's failure to implement transportation services as written in the IEP is nonsensical. It is the SEA, not the LEA, that bears ultimate responsibility under the law. Under the IDEA, it is the state that must ensure that any state rules, regulations and policies conform to the law. 20 U.S.C.A. § 1407(a). It is the state that receives and distributes federal IDEA funds[1]. 20 U.S.C.A. § 1411 (a) and (f). As a condition for the receipt of said funds, the state must agree to make a FAPE available to every eligible child residing within the state. 20 U.S.C.A. § 1412 (a)(1). Ultimately, the state must create a system that ensures LEA compliance with the IDEA. 20 U.S.C.A. § 1412 (a)(11). Moreover, if the state determines that the LEA "[h]as one or more children with disabilities who can best be served by a regional or State program or service delivery system designed to meet the needs of these children," the state may use IDEA funding that would otherwise have been available to the LEA to provide special education and related services directly to children with disabilities residing

---

[1] The state can also reallocate funds at its discretion. 20 U.S.C.A. § 1411 (f)(3).

in the area served by that LEA, or for whom that State agency is responsible. 20 U.S.C. 1413 (g); 34 C.F.R. § 300.227(a)(1).

That is precisely what the District has done here. The District has determined that children with disabilities in the District can best be served by special education transportation services provided by OSSE DOT. See AR at 1034-49. OSSE has assumed responsibility for providing school transportation for students who require it, and funds have been diverted from LEAs to OSSE for this purpose. In accordance with OSSE's policy, Bridges must rely on OSSE to provide special education transportation. AR at 1039 ("It is the expectation of [the District] that all [schools] adhere to this Policy."). Bridges would contravene District policy even if it volunteered to transport K.N. As such, Bridges cannot be held liable for OSSE's failure to provide transportation in accordance with the IEP.

Ms. Pierre's reliance on the Tenth Circuit decision in *Ellenberg v. New Mexico Mil. Inst.*, 478 F.3d 1262, 1269 (10th Cir. 2007), to support her contention that Bridges is ultimately responsible here is misplaced. The Tenth Circuit's decision does not support Ms. Pierre's claim against Bridges, but rather supports Bridges' argument outlined above. The Tenth Circuit summarizes the responsibilities of the SEA and LEAs:

> Responsibility for implementing the IDEA and policing IDEA compliance rests with the states, subject to the IDEA's limited but specific structural framework. *Schaffer ex rel. Schaffer v. Weast*, 546

8

> U.S. 49, 126 S.Ct. 528, 531, 163 L.Ed.2d 387 (2005) (*citing Rowley*, 458 U.S. at 183, 102 S.Ct. 3034). Each "State Educational Agency" ("SEA") must enact procedures and policies to implement the IDEA, and ensure both state and local compliance with the Act. 20 U.S.C § 1412(a)(11). "Local Education Agencies" ("LEAs") are given primary responsibility for overseeing the actual provision of special education services to disabled children. See § 1413(a)(1); *Gadsby v. Grasmick*, 109 F.3d 940, 942–43 (4th Cir.1997). SEAs ensure LEA compliance through the power of the purse: Federal IDEA funds are distributed to the SEA, and those funds may not be forwarded to LEAs within the state unless they demonstrate compliance with the IDEA to the satisfaction of the SEA. § 1413(a), (d). In addition, the IDEA places an obligation to provide special education services on "public agencies" that are "responsible for providing education to children with disabilities," 34 C.F.R. § 300.53, as well as on "education services agencies" that have "administrative control and direction" over a public secondary school, § 300.12.

> Should an LEA or state agency prove "unable to establish and maintain programs of free appropriate public education in compliance with IDEA," the SEA must provide special education and related services directly to disabled children. 20 U.S.C. § 1413(h)(1). In so doing, the SEA "may provide special education and related services ... in such a manner and at such locations (including regional or state centers) as the State agency considers appropriate." § 1413(h)(2). However, the SEA is required to comply with IDEA requirements as if it were an LEA. 34 C.F.R. § 300.175.

*Ellenberg*, 478 F.3d at 1269.

There is no dispute that LEAs are typically responsible for developing and implementing IEPs, but ultimate "responsibility for implementing the IDEA and policing IDEA compliance rests with the states." *Id*. Thus, when the SEA takes on that responsibility, liability clearly rests with the State. Consistent with the Tenth Circuit's analysis above, the district court has already made it clear that the LEA is

9

not responsible if the SEA is on notice of the LEA's inability to provide FAPE to a student and the SEA agreed to assume responsibility for doing so. *See Thomas v. D.C.*, 773 F. Supp. 2d 15, 20 (D.D.C. 2011) ("The LEA charter may be excused from these responsibilities if it previously notified the SEA (i.e., the DCPS) that it is unwilling or unable to provide a FAPE to a child, and the SEA agreed to assume responsibility."); *B.R. ex rel. Rempson v. D.C.*, 802 F. Supp. 2d 153, 161 (D.D.C. 2011) ("The SEA may only be held responsible for developing and implementing a FAPE, however, if an LEA previously notified the SEA that it was unwilling or unable to provide a FAPE to a child, and the SEA agreed to assume responsibility, or if a hearing officer directed the SEA to provide the child with an FAPE."). Ms. Pierre has never directly responded to this clear legal authority contradicting her position.

Given OSSE's assumption of responsibility for transportation services in the District, Bridges cannot be held liable for transportation failures that are attributable solely to OSSE. OSSE policy requires District LEAs to utilize OSSE DOT for the provision of transportation to students with disabilities, and LEAs are required to adhere to OSSE's transportation policy. AR at 1039. OSSE is not only aware that LEAs in the District of Columbia are unable to provide transportation, but also has mandated as much. Accordingly, OSSE has assumed responsibility as a matter of law and policy.

10

Ms. Pierre's contention that Bridges is responsible for any transportation service or support that OSSE chooses not to provide is not consistent with the law. The IDEA is clear that the SEA "may provide special education and related services ... in such a manner and at such locations (including regional or state centers) as the State agency considers appropriate." § 1413(h)(2). However, the SEA is required to comply with IDEA requirements as if it were an LEA. 34 C.F.R. § 300.175. Ms. Pierre's own analysis of this issue concedes that even though the SEA has some discretion in how it delivers services, it must do so in conformity with the student's IEP and in a way that assures FAPE is provided to the student. By picking and choosing what services it will provide to the student in this case, OSSE is not exercising its discretion in conformity with the student's IEP or in a way that assures that he receives FAPE. And the obligation to provide FAPE to every eligible student in the District of Columbia ultimately rests with OSSE. Thus, if the disputed service in this case is required for FAPE under the IDEA, OSSE must provide it.

Not only is the law clear on this question, but practical considerations also clearly dictate that OSSE provide the transportation services deemed necessary for K.N. to receive FAPE. OSSE transportation for K.N. includes a bus driver, a bus attendant that helps K.N. get on and off the bus[2] and a dedicated nurse. OSSE

---

[2]  *See* AR at July 2022 IEP Meeting Recording (approx. timestamp 38:40) (P-22)

policy also allows for the provision of additional supportive services such as the assistance of an aide as needed. AR at 1042. OSSE policy states that "[d]rivers and attendants are not responsible for providing physical assistance to student passengers other than providing occasional non-intrusive assistance that does not require lifting or carrying the student." AR at 1045. OSSE policy does not prohibit drivers and/or attendants from doing so when necessary nor does the policy state that supportive service providers such as nurses or aides cannot do so. *Id*. Bridges, on the other hand, does not provide staff for the bus and does not have staff present at K.N.'s home when the bus arrives to pick him up or drop him off. Given the law, OSSE policy, and presence of OSSE DOT staff when the student needs support getting in and out of his apartment building, OSSE is in the position to provide all transportation services and related supports deemed necessary for K.N.

Bridges agreed to add the door-to-door support requested by Ms. Pierre to the IEP over OSSE's objection in July 2022 to enable litigation to test whether OSSE's refusal to provide the support was legally sound. This collaboration with Ms. Pierre does not make Bridges responsible for providing the support if it is determined to go beyond what is legally required. If the Court concludes that the IDEA does not mandate carrying K.N. to the bus, then that conclusion will apply with equal force to the District and Bridges.

---

(Statement from OSSE DOT representative, Ron Lopes during July 2022 meeting).

12

Had Bridges refused to add this support and it was determined to be legally required for FAPE, then Bridges would be complicit in denying the student FAPE, which Bridges has no interest in. Bridges has worked tirelessly to support K.N. and work collaboratively with Ms. Pierre, and the actions it took to secure the student effective transportation support from OSSE were no different.

## II.    Bridges does not take a position as to whether the IDEA's "transportation requirement should be interpreted broadly as Ms. Pierre suggests.

The issue here is not which public agency is responsible for providing transportation services required for FAPE – that is obviously OSSE. The question is whether the door-to-door transportation supports prescribed in the IEP go beyond what any public agency in the District of Columbia can be required to provide for FAPE. This fight is between Ms. Pierre and the District. If the Court agrees with Ms. Pierre that FAPE for K.N. requires the related service of transportation to include the door-to-door support prescribed in the IEP, then OSSE is the public agency required to provide it. If the door-to-door support prescribed in the IEP goes beyond what is required to provide for FAPE, then no public agency is required to provide it, and Ms. Pierre will be responsible for getting the student out of his apartment building to get on the bus.

Bridges does not oppose Ms. Pierre's argument that K.N. requires the door-to-door assistance to access his transportation service. However, Bridges does

13

recognize that whether it is the parent or school system that is required to provide that support is an unsettled question of law. This legal uncertainty is precisely why Bridges agreed to add the support to the IEP even though OSSE refused to provide it. Bridges included the disputed transportation supports in the IEP because Bridges believed it was necessary to do so to ensure that an appropriate IEP was in place for the student even though OSSE disagreed. In doing so, Bridges alleviated the need for Ms. Pierre to challenge the appropriateness of the IEP and move straight to challenging OSSE's refusal to implement a required related service.

## III.   Conclusion

As shown above, OSSE is responsible for implementing the related service of transportation to eligible students in the District of Columbia, and as such, the hearing officer and district court correctly held that Bridges bears no liability with respect to the transportation issues asserted by Ms. Pierre. If the service in dispute is required by the IDEA, then District law and policy make it clear that OSSE is responsible for implementing it as prescribed by the IEP.

Respectfully submitted,

/s/ *Lauren E. Baum*

Lauren E. Baum [53598]
Law Office of Lauren E. Baum, PC
3573 Warder Street, NW, #2
Washington, DC 20010
202-450-1396
l.baum@laurenebaumlaw.com

*Attorney for Defendant-Appellee*
*Bridges Public Charter School*

## CERTIFICATE OF COMPLIANCE

I certify that Defendant-Appellee's principal brief complies with the applicable type-volume limitations because the brief contains 4,119 words. The brief complies with the applicable typeface and style requirements because it has been prepared in a proportionately spaced typeface using Microsoft Word 2013, 14 point Times New Roman.

/s/ *Lauren E. Baum*
Lauren E. Baum [53598]
Law Office of Lauren E. Baum, PC
3573 Warder Street, NW, #2
Washington, DC 20010
202-450-1396
l.baum@laurenebaumlaw.com

*Attorney for Defendant-Appellee*

16

## CERTIFICATE OF SERVICE

I hereby certify that, this 15th day of December, 2023, an electronic copy of

Defendant-Appellee's principal brief was served through the Court's CM/ECF

system upon counsel for Appellant and the District of Columbia:

> Charles Sibert, Esq.
> Jeremy Girton, Esq.

and by other electronic means upon counsel for the following *amicus*:

> Craig Leen, Esq.

/s/ *Lauren E. Baum*
Lauren E. Baum [53598]

17